WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.
January, 1879.

## MATTER OF IGGLESDEN.

*In the matter of the estate of* MARY IGGLESDEN, *deceased.*

The petition of an administrator for an order to sell real estate of the intestate, for the purpose of paying debts, should contain a description of all the real estate of which he died seized.

Where real estate which was devised to the testatrix' husband for life, remainder to her children, had been sold, by order of the Surrogate, to pay her debts, and a surplus remained, and thereafter one of the children died and the father was appointed administrator of the child's estate, *Held*, on an application by such administrator for an order to apply a portion of such surplus to the payment of her debts, that, the fund retaining its character as real property, her interest in it was only an expectant one, and that no authority existed to decree a sale of such an interest for the purpose, and the application must be denied.

The child being an infant at the time of her death, *Held* that her father, and not her estate, was liable for medical treatment and funeral expenses.

IT appeared from the petition in this matter that Mary Ann Igglesden was the daughter of John and

Mary Igglesden ; that the latter died seized of certain real estate, which she devised.   Mary Ann survived her mother, but died in 1875, leaving her father and several brothers surviving.   In 1878, certain real estate of the mother, situated in Mount Vernon, having been sold, by order of this court, for the payment of her debts, distribution of the surplus money was made, after the payment of expenses and debts, among her devisees and those claiming under them, as provided by statute.   John Igglesden, the father, being entitled to the use for life of his deceased daughter's share, and also that of a deceased son, less the dower-right of the son's widow, had set apart to him about $250, to be invested for his benefit during his life.   The petition now presented by him also shows that he was, on the 2d day of January, 1879, duly appointed by the Surrogate of New York, administrator, etc., of said Mary A. Igglesden, deceased ; that she left no personal estate ; that she died seized in fee of the one undivided fourth part of a certain lot of land in Mount Vernon ; that she left debts unpaid to the amount of $121.69, of which $84.50 were for funeral expenses and the remainder for medicines and services of counsel ; that she died unmarried and without issue ; that her only heirs-at-law entitled to her estate are two brothers, one of whom is a minor, subject to the life interest therein of her father, the petitioner ; that said lot in Mount Vernon was sold in the proceeding above mentioned ; and that the share of the proceeds which would have belonged to her, if living, and now in the hands of the Surrogate, is $141.96 ; and the prayer of the petition is for an order directing the parties in in-

terest to show cause why said last named sum, or so much thereof as may be necessary, shall not be applied to the payment of said debts and the expenses of the present proceeding.

G. D. W. CLOCKE, *for the petitioner.*

THE SURROGATE.—It is the ordinary practice to grant orders for citations without any careful scrutiny into the merits of the application, deferring it until the return day.  But where one of an extraordinary character, like the one in question, is presented, it is better to make the examination at once, and, if it shall appear not to be meritorious, to deny it at the outset, and thus save the parties needless expense.

If this is to be regarded as of the nature of an application by the administrator for an order to sell real estate to pay debts, the petition is defective in not containing a description of *all* of the real estate of which the deceased died seized, etc., as required by subd. 4, § 2, 2 R. S., p. 100; it appearing from the proceeding had in this court, and referred to in the petition, that the mother of Mary Ann died seized of other real estate, of a share of which the latter also died seized as one of the devisees, situate at Tremont, and which was not sold in that proceeding because the proceeds of the sale of the Mount Vernon lot proved to be more than sufficient to pay all debts.

The papers in the proceedings to prove Mary Igglesden's will show that Mary Ann was, in 1872, sixteen years of age, so that at the time of her death, in 1875, she was still a minor, and it was the duty of her father to have paid her doctor's bill and funeral charges, and

she was not competent to contract a debt of any sort that would be binding upon her estate.

Besides, the reversionary interest in the fund belongs to the two brothers, one of whom is a minor. It has not lost its character as real estate and they are not seized of it, but have only an expectant estate therein; and neither this nor the Supreme Court has any power to direct the sale of such an estate. (Jenkins v. Fahey, 11 *Hun.*, 257.)

The first section of chap. 150, Laws of 1850, provides, among other things, that when any surplus moneys arising from a sale of real estate to pay debts, shall belong to any person who has a temporary interest therein, and the reversionary interest belongs to another, the Surrogate shall order it invested, and make such order for the payment of interest and the principal thereof, as the Supreme Court is authorized and required by law to make in analogous cases. The next section directs how the investments shall be made, the securities kept, etc. I apprehend that all the Supreme Court could do in such a case would be to direct the payment of interest on the fund to the father for life, and, at his death, the principal to the heirs-at-law of his deceased daughter. That is precisely what this court did.

Having thus complied with the statute referred to, my functions are ended, except only in so far as investing and paying are concerned. I am not aware of any statute or rule of law conferring on me the power I am asked to exercise.

If the claims against the deceased are valid, the remedy, I think, may be found in a proceeding to sell her interest in the property situated at Tremont.

For these reasons this application must be denied.

Ordered accordingly.